1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

8

## DISTRICT OF NEVADA

9
10  BRENDA TODD,

11        Appellant,                                Case No. 2:12-cv-01841-KJD-GWF

12  v.                                              Bankruptcy Court No. 09-14362-LBR

13  BRENDA MOODY WHINERY, *as*                      <u>ORDER</u>
    *Creditor Trustee of Fort Defiance Housing*
14  *Corporation, Inc.*

15        Appellee.

16

17        Presently before the Court is Appellant's Opening Brief (#12).  Appellee filed a response

18  (#13) to which Appellant replied (#24).

19  <u>I. Background</u>

20        On May 25, 2003, Brenda Todd ("Debtor Todd") was injured in a serious car accident. As a

21  result, she filed an action against Aaron Wade Melancon and Casablanca Resorts, LLC, seeking

22  damages. In December 2005, in lieu of proceeding to trial, the parties reached an agreement (the

23  "Settlement") wherein Debtor Todd received $2,500,000 in exchange for releasing all claims,

24  demands, and causes of action arising out of the incident.

25        In October 2006, Brenda Moody Whinery, the Creditor Trustee for Fort Defiance Housing

26  Corporation, Inc. ("Creditor Trustee"), filed a complaint in the Arizona Bankruptcy Court against

1    Debtor Todd in conjunction with a temporary restraining order freezing all of Debtor Todd's assets

2    and bank accounts. On March 9, 2009, the Arizona Bankruptcy Court granted the Creditor Trustee a

3    judgment of $18,500,883.59.

4            On March 23, 2009, Debtor Todd filed Chapter 11 Bankruptcy in the Nevada Bankruptcy

5    Court. On April 10, 2009, she filed her summary of schedules and statement of financial affairs. On

6    April 30, 2009, she filed an amended Schedule B and an amended Schedule C, listing her property

7    claimed as exempt. On September 4, 2009, the Bankruptcy Court converted Debtor Todd's Chapter

8    11 case to Chapter 7. On November 25, 2009, the Creditor Trustee filed an objection to the

9    exemptions Debtor Todd claimed, and, on December 31, 2009, the Creditor Trustee filed an

10   amended objection.

11           On January 5, 2010, Debtor Todd filed a response to Creditor Trustee's amended objections.

12   The response included an attached document (the "Attached January Amendment") stating that

13   Debtor Todd had filed an amended Schedule C Property Claimed as Exempt form with the Chapter 7

14   Trustee in accordance with the Debtor's meeting with said trustee on November 30, 2009. Among

15   other things, the form claimed an exemption for payments for compensation for future earnings in the

16   amount of $1,122,384 pursuant to Nev. Rev. Stat. 21.090(1)(w).

17           On August 25, 2011, the Nevada Bankruptcy Court entered an Order approving a settlement

18   agreement between the Creditor Trustee and the Chapter 7 Trustee appointed in Debtor Todd's

19   Nevada bankruptcy case. On November 21, 2011, the Creditor Trustee filed a renewed objection to

20   the homestead exemption. On December 22, 2011, Debtor Todd filed a response to the renewed

21   objection, which asserted that Debtor Todd's claims of exemption had already been set forth in the

22   Schedule C that had been filed on April 30, 2009.

23           On March 6, 2012, Debtor Todd filed an emergency motion for turnover of funds pursuant to

24   exemptions claimed in the Attached January Amendment. On April 3, 2012, the Creditor Trustee

25   filed a response to the emergency motion. The response included objections to Debtor Todd's

26   claimed exemptions in real property, automobiles, compensation for personal injury, and payments

2

1    for future earnings. The response also alleged that Debtor Todd's Attached January Amendment was

2    not filed in compliance with the Federal Rules of Bankruptcy Procedure.

3         On April 17, 2012, the Nevada Bankruptcy Court held a hearing regarding Debtor Todd's

4    exemptions. In responding to prejudice concerns raised by Creditor Trustee, the Court held that,

5    although Debtor Todd's Attached January Amendment was not filed in compliance with federal

6    rules, it was sufficient to give Creditor Trustee notice of Debtor Todd's intent to claim the

7    exemptions. The Court then ordered Debtor Todd to properly file the exemptions.

8         On May 21, 2012, Debtor Todd filed her amended exemptions. In this pleading, Debtor Todd

9    asked the Nevada Bankruptcy Court to find that her Attached January Amendment constituted a valid

10   amendment, making Creditor Trustee's objections untimely. On June 4, 2012, the Nevada

11   Bankruptcy Court denied Debtor Todd's homestead exemption claim and did not enter any order

12   finding that Debtor Todd's Attached January Amendment constituted a valid amendment.

13        On August 3, 2012, the Creditor Trustee filed a Motion for Summary Judgment regarding

14   Debtor Todd's claimed exemption for compensation of lost future earnings. On October 9, 2012, the

15   Court granted the Creditor Trustee's Summary Judgment Motion, denying Debtor Todd's claim that

16   the sum of $1,122,384 Debtor Todd received in the Settlement was exempt as payments for

17   compensation for future earnings. On October 18, 2012, Debtor Todd filed a Notice of Appeal.

18   II. Standard of Review

19        Pursuant to 28 U.S.C. §158(a), this Court has jurisdiction to review the Bankruptcy Court's

20   Summary Judgment Order. This Court reviews the Bankruptcy Court's findings in the same manner

21   that the court of appeals would review a district court's findings in a civil matter.  28 U.S.C. §

22   158(c)(2).  Accordingly, the Court reviews the Bankruptcy Court's factual findings under a clearly

23   erroneous standard, and conclusions of law de novo.  See In re Healthcentral.com, 504 F.3d 775, 783

24   (9th Cir. 2007); In re First Magnus Fin. Corp., 403 B.R. 659, 663 (D. Ariz. 2009). "A finding is

25   'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire

26

3

1  evidence is left with the definite and firm conviction that a mistake has been committed." United

2  States v. United States Gypsum Co., 333 U.S. 364, 395 (U.S. 1948).

3  III. Analysis

4        The issue before the Court is whether the Nevada Bankruptcy Court properly granted Creditor

5  Trustee's Motion for Summary Judgment.[1] Summary judgment may be granted if "the pleadings,

6  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

7  show that there is no genuine issue as to any material fact and that the moving party is entitled to a

8  judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317,

9  322 (1986).

10       When a moving party bears the burden of proof at trial, "it must come forward with evidence

11  which would entitle it to a directed verdict if the evidence went uncontroverted at trial." Houghton v.

12  South, 965 F.2d 1532, 1536 (9th Cir. 1992). In other words, a moving party with the burden of proof

13  at trial cannot rely on deficiencies in the nonmoving party's case; rather, it must affirmatively

14  demonstrate an absence of a genuine issue of material fact. See generally id. In the bankruptcy

15  context, when a debtor claims an exemption, the objecting party bears the burden of proving the

16  exemption is inappropriate by a preponderance of the evidence. In re Carter, 182 F.3d 1027, 1034

17  (9th Cir. 1999); In re Kelley, 300 B.R. 11, 17 (B.A.P. 9th Cir. 2003); USCS Bankruptcy R 4003(c);

18  see also In re Arnold & Baker Farms, 177 B.R. 648, 654 (B.A.P. 9th Cir. Ariz. 1994) ("Proof by the

19  preponderance of evidence means that it is sufficient to persuade the finder of fact that the

20  proposition is more likely true than not."). Generally, in a summary judgment motion, the evidence

21  "is to be measured against the substantive evidentiary standard of proof applicable at trial." Security

22  Farms v. International Bhd. of Teamsters, 124 F.3d 999, 1011 (9th Cir. Cal. 1997) (citing Anderson

23  v. Liberty Lobby, 477 U.S. 242, 254 (1986)). Accordingly, in the present case, the proper question as

24

25       [1] Debtor Todd also alleged that Creditor Trustee's opposition to Debtor Todd's Attached
26  January Amendment was untimely. Contrary to Debtor Todd's contentions, the amendment was
    timely.

4

to whether a genuine issue exists is "whether the evidence presented is such that a jury applying [the preponderance of the evidence standard] could reasonably find for either the plaintiff or the defendant." <u>Anderson</u>, 477 U.S. at 255.

The Bankruptcy Court committed legal error in finding that the Creditor Trustee met its burden. In the present case, Creditor Trustee was required to affirmatively demonstrate that no genuine issue of material fact existed with respect to the invalidity of Debtor Todd's claimed exemption pursuant to Nev. Rev. Stat. Ann. § 21.090(w). Specifically, Creditor Trustee had to demonstrate that the Settlement was not for future lost earnings. In support of its motion, Creditor Trustee presented, and the Bankruptcy Court relied on, three pieces of evidence. First, Creditor Trustee alleged that the Settlement failed to allocate any damages to future lost earnings. Second, based on Debtor Todd's tax returns and testimony, Creditor Trustee alleged that Debtor Todd continued to receive payments from her employer after the 2003 accident. Third, Creditor Trustee alleged that Debtor Todd's Settlement could not have been for lost wages because Debtor Todd did not report any portion of it as "other income" on her tax returns. The Bankruptcy Court found that these factors combined demonstrated that no genuine issue of material fact existed.

The Bankruptcy Court committed clear error in finding that the Settlement, in conjunction with Debtor Todd's earnings from 2003 to 2005, established an absence of factual issues. As to the Settlement, the Bankruptcy Court found that it denied liability and didn't allocate an award for lost wages. While these facts seem to support Creditor Trustee's motion, the Settlement equally supports Debtor Todd's position for two reasons. First, denial of liability is a standard provision for most settlement agreements. Furthermore, liability or not, a party who opts to settle makes its offer based on several factors, which in many cases will include a consideration of lost wages. Second, while the Settlement doesn't specifically allocate damages, this does not foreclose whether a portion of the award is attributable to future lost earnings. The "settlement agreement extends to and includes, without limitation, all damages of every kind, compensatory, exemplary, statutory, contractual, and under warranty, occurring both in the past and which may occur in the future, as a result of the

5

1   damages asserted herein by settling plaintiff." Docket No. 12, Exhibit 3 at 3. Like the denial of

2   liability, a comprehensive description of damages covered by a settlement is a standard provision of

3   such agreements. Thus, neither omitting allocation nor stating generally all types of damages

4   persuasively dispels the factual question. However, the Court considers an affirmative

5   acknowledgment of potential future loss more persuasive than an omission of allocation. As to

6   Debtor Todd's earnings from 2003 to 2005, this Court finds no case law holding or statute providing

7   that the recipient of lost future wages cannot later work for income, and neither the Creditor Trustee

8   nor the bankruptcy court has pointed the Court to such authority. Furthermore, that Debtor Todd

9   continued to receive payments while recovering from her accident does not show that the Settling

10  Defendants failed to account for the potentiality of future lost wages. In fact, Debtor Todd's medical

11  reports, showing 37% permanent body impairment, would have given Settling Defendants a

12  reasonable basis for including future lost wages. Docket No. 12, Exhibit 1 at 8.

13          Lastly, the Bankruptcy Court erred in relying on Debtor Todd's failure to report her

14  Settlement on her tax returns. Contrary to Creditor Trustee's contention, the law does not require

15  Debtor Todd to report lost wages as "other income." The Supreme Court has stated that

16          pain and suffering damages, medical expenses, and *lost wages* in an ordinary tort case are
            covered by [26 U.S.C. § 104(a)(2)] and hence excluded from income "not simply because
17          the taxpayer received a tort settlement, but rather because each element . . . satisfies the
            requirement . . . that the damages were received on account of personal injuries or
18          sickness."

19  O'Gilvie v. U.S., 519 U.S. 79, 84 (1996) (quoting Comm'r v. Schleier, 515 U.S. 323, 330 (1995))

20  (emphasis added); see also Rev. Rul. 85-97, 1985-2 C.B. 50 (1985); 1 Mertens Law of Fed. Income

21  Tax'n § 7:91.  Accordingly, the fact that Debtor Todd did not report lost wages on her tax return is

22  meaningless. As far as taxable income is concerned, the dispositive question is not whether the

23  Settlement was for lost wages; it is whether the Settlement was received "on account of personal

24  physical injuries." 26 U.S.C. § 104(a)(2).  Thus, considering Debtor Todd's injuries, the Settlement

25  was not unequivocally taxable. Therefore, relying on the tax returns was clear error.

26

6

1    In consequence of clearly erroneous factual findings, the Bankruptcy Court inappropriately

2  granted summary judgment. The Court finds that a genuine issue of material fact exists as to whether

3  the Settlement was for lost wages or another purpose. Thus, the Court remands the case to the

4  Bankruptcy Court for further proceedings in light of this opinion.

5  IV. Conclusion

6    Accordingly, this Court **REVERSES** the bankruptcy court's *Order Granting Creditor*

7  *Trustee's Motion for Summary Judgment Re: Debtor Brenda Todd's Claimed Exemption for*

8  *Payments for Compensation for Future Earnings* entered in Case No. 09-14362-LBR, September 27,

9  2012, and **REMANDS** the issue to the bankruptcy court for further proceedings.

10    DATED this 26th day of June 2013.

11

12

13    _____

14    Kent J. Dawson
     United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26